MEMPHIS CONSOLIDATED GAS & ELECTRIC COMPANY *et al. v.* R. A. SIMPSON, Admr., *et al.*

*(Jackson.* April Term, 1907.)

1. **BILL OF EXCEPTIONS.** Estoppel to insist on irregularity expressly waived, when; equitable estoppel applies.

Where, at the close of the trial in the lower court, it was agreed between the attorneys and the court that the trial judge might then and there sign a skeleton bill of exceptions, which would be complete, except for the transcript of the testimony, and that this should be inserted as soon as it was transcribed from stenographic notes, which was done in accordance with the agreement; and the attorneys for the successful party expressly agreed that no objection should be made to, and no advantage taken of, the irregularity of this proceeding, when the case should come before the supreme court, such agreement operated to estop them from objecting that the transcript evidence was not properly identified and incorporated in the bill of exceptions. Equitable estoppel applies in such case. (*Post, pp.* 534-544.)

Cases cited and approved: Montgomery v. Heilman, 96 Pa., 44; Potter v. Myers, 31 Ohio St., 103; Ridgway v. Morrison, 28 Ind., 201; Canal Co. v. Hathaway, 8 Wend. (N. Y.), 480; Dezell v. Odell, 3 Hill, 215; Ray v. McMurtry, 20 Ind., 307; Reichenbach v. Ruddach, 121 Pa., 18; Paper Co. v. Bank, 33 Ill. App., 630; Lederbrand v. Pickerell, 167 Ill., 624; Lane v. Partee, 41 Ga., 202.

2. **SAME.** Same. Client is bound by agreement of his attorneys waiving the irregularity.

Under the agreement entered into by the attorneys as stated in the foregoing headnote, the client was estopped as well as his attorneys to object that the transcript testimony was not properly identified and incorporated in the bill of exceptions, since the client was represented by his attorneys in this agreement. (*Post, pp.* 544-546.)

Gas & Electric Co. v. Simpson.

Cases cited and approved:  Kent v. Ricards, 3 Md. Chy., 392; Brooks v. Twitchell, 182 Mass., 443; Metcalf v. Williams, 104 U. S., 93; Railroad v. King, 80 Tex., 681; Holland v. Trotter, 22 Grat. (Va.), 136; Halliday v. Stuart, 151 U. S., 229; Thompson v. Laughlin, 91 Cal., 313.

Cases cited and distinguished:  Ballard v. Railroad, 94 Tenn., 205.

3. SAME. Same. Same. Injunction against insisting on irregularity which was waived.

Where the successful party in the court below and appellee in the supreme court, through his attorneys, are seeking in the supreme court to take advantage of such irregularity in violation of their agreement to waive the same made as shown in the first headnote, a bill by the appellant will lie in chancery to enjoin the appellee and his attorneys from endeavoring to take advantage of such defect or irregularity.

4. SAME. Extraneous matter must be authenticated by the judge to make it a part of the record.

It is a high exercise of judicial power to make extraneous matter part of the record, and before such matter can become a part of the record; it must be examined and authenticated under the hand and seal of the judge.  (*Post, p.* 539.)

Cases cited and approved:  Wynne v. Edwards, 7 Humph., 417; Battier v. State, 114 Tenn., 563.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

W. A. PERCY, E. E. WRIGHT, and E. HEDRICK, for complainants.

TIM E. COOPER, MYERS, BANKS & APPERSON, and BELL, TERRY, ANDERSON & BELL, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The present case comes by appeal from the chancery court of Shelby county. The decree pronounced in the cause was upon an order *pro confesso* taken against all the defendants. The allegations of fact in the bill, upon the consideration of the cause by this court, must therefore be taken as true. From these allegations it appears that in December, 1903, one of the defendants, to wit, R. A. Simpson, as the administrator of the estate of Wm. E. Simpson, deceased, brought a suit against the Memphis Telephone Company and the Memphis Consolidated Gas & Electric Company, in the circuit court of Shelby county, for having by their alleged negligence, caused the death of his intestate. The cause was tried in the latter part of July, 1905, in that court, and the jury impaneled in the cause returned a verdict therein for $7,500, upon which judgment was pronounced after a motion for a new trial had been overruled. From this judgment both defendants prayed and were granted an appeal in the nature of a writ of error to this court.

At the close of the trial, and after the motion for a new trial had been overruled, but before the appeal in er-

Gas & Electric Co. v. Simpson.

ror was perfected, there arose in the court a question
as to the bill of exceptions to be prepared in view of the
appeal. The bill avers that at this point, the 3d of Au-
gust had been reached, and that the trial judge and at
least one of the counsel of plaintiff in the cause and one
of the counsel of the defendants were anxious to leave
the city for vacation, in which rest and recreation might
be secured. The trial had lasted several days, and a
large number of witnesses had been examined for the
plaintiff and for the defendant. The testimony of these
witnesses had been taken down by a stenographer, and
much of it existed at that time in stenographic notes,
which needed to be extended in longhand or typewrit-
ing before it could be inserted in the bill of exceptions,
so as to be intelligible to court and counsel. To do this,
according to the representation of the stenographer who
made these notes, would require several days. In con-
sideration of the premises, and with a purpose to accom-
modate both the court and such of the counsel who de-
sired to leave the city, an agreement was reached and
entered into between the counsel and the court that the
trial judge might then and there sign a skeleton bill of
exceptions, which would be complete, except for the
transcript of the testimony, and as to this blank spaces
should be left for the insertion therein in proper places
of the same as soon as it was transcribed. It is further
alleged that it was then represented and expressly stated
by the counsel for the administrator, Simpson, that no
objection should be made to, and no advantage should be

taken by, them of the irregularity of this proceeding when the case should come before the supreme court on appeal in error. Upon the faith of this agreement the bill of exceptions was accordingly signed in this shape and left in the hands of the clerk of the trial court. In the course of a few days the stenographic notes of this testimony were written out at length and turned over to the clerk of the trial court, who inserted them in the bill of exceptions in accordance with this agreement, and in due course made out and transmitted the record to the supreme court. On reaching this court the case under a proper title was duly docketed, when, it is alleged, the counsel for Simpson, who with their client are made defendants to this bill, at the first opportunity and in utter disregard and repudiation of their statements, representations, and agreement, made to the supreme court a suggestion in diminution of the record so signed up. Upon this suggestion the supreme court by writ of *certiorari* directed the clerk to send up the original bill of exceptions in the shape it was when signed by the trial judge.

It is further alleged that when, in answer to this writ this original record reached the supreme court, and counsel for the administrator, Simpson, again "in disregard and repudiation of their statements, representations, and agreement," moved the supreme court to strike from the transcript testimony incorporated therein, in accordance with the arrangement and agreement set out above. When this was done the plaintiffs in er-

ror in the cause presented the present bill of complaint in the chancery court of Shelby county against R. A. Simpson, administrator, and against D. E. Myers and John E. Bell, his counsel, praying that they might be enjoined from prosecuting this motion before the supreme court; this motion being based upon the ground that the testimony in question was not properly identified and incorporated in the bill of exceptions.

The bill alleged that the transcript in the case had been made out by the clerk of the circuit court in exact compliance with the agreement set out above, and that but for this agreement the complainant's counsel would have caused a bill of exceptions regular in all respects to have been made out, submitted to, and authenticated by the trial judge; yet, relying on this agreement, they had permitted the term of court at which the case was to be tried to pass, and no objection or exception was made, and no intimation was given that such would be made by the defendants, until it was too late for complainants to get a bill of exceptions regularly made and signed. It was further alleged that the complainants, who were the plaintiffs in error in the cause appealed from the circuit court, were ready, upon the record as made up, to present good and substantial reasons why the judgment in that cause should be reversed; but, if the motion made to strike out the testimony from the transcript was prosecuted and entertained, that they would be deprived of all opportunity of presenting their reasons for reversal, thus working to them an irrepar-

able injury.  Having no adequate remedy at law, complainants prayed an injunction against the defendants, restraining them from further prosecuting their motion to strike out the testimony from the transcript and from further seeking advantage of the fact that it was not properly identified and incorporated in the bill of exceptions when the same was signed by the trial judge.

A fiat for an injunction was granted by the chancel·lor, as prayed for, preliminary in character, which, upon final decree, was made perpetual.  From this decree the cause has been brought into this court by appeal, and assignments of error have been made to the action of the chancellor in rendering this decree.

Upon the facts averred in the bill of complainants, and admitted to be true by the order *pro confesso,* the question is not that asked by the counsel of the appellants, "Can a bill of exceptions not authenticated by the judge be made by agreement of counsel?" and answered by him in the negative with much ingenuity and citation of authority, but rather this, "Shall these defendants be permitted to impeach, as they are seeking to do, a bill of exceptions authenticated by the trial judge and perfected upon its face, in breach of a solemn agreement made by the counsel at the time of the authentication, when such impeachment would work irreparable injury to the complainant?"  The real question presented in the record is that aptly put by the counsel of complainants:  "Can an attorney at law to-day in open court, and for the convenience of himself as well as for that of

the court and opposing counsel, be heard to assure the court and opposing counsel that he will make no objection to, nor take any advantage of, an irregularity in a particular mode of practice, be heard to-morrow, when it is too late to cure the irregularity, to make the very same objection and take the very advantage he solemnly assured both court and counsel he would not make or take?" Another question, which is but a corollary of the first, is: "If the attorney will not be heard in this act of repudiation, will the litigant whom the attorney represented be allowed to do so?"

No court has gone further than this in regard to the necessity for having bills of exception examined and authenticated by the trial judge. As early as *Wynne* v. *Edwards*, 7 Humph., 419, it was held that it was a high exercise of the judicial power to make extraneous matter part of the record, and that before such matter could become a part of the record it must be examined and authenticated under the hand and seal of the judge. The latest published recognition of the soundness of this rule is in the case of *Battier* v. *State*, 114 Tenn., 563, 86 S. W., 711, where it was applied. But there is another rule of superior authority, recognized wherever a system of enlightened jurisprudence prevails, and that is, a man who, in his dealings with another, induces and intends to induce that other to adopt a particular line of action, will not be permitted afterward to repudiate his conduct or words to that other's irreparable damage. This rule lies at the base of the doctrine of equitable

estoppel. Such an estoppel involves a question of legal ethics, and "applies wherever a party has made a representation, by words or conduct, which he cannot in equity and good conscience prove to be false; and this kind of estoppel, being a broad doctrine of equity, cannot be limited in application by the terms of any narrow legal definition." The case presented in this record is one within the spirit and letter of this rule. It is one where, on the faith of an agreement made in a court of justice, that court has been induced to adopt a course of proceeding involving technical irregularity, and on which the complainants were induced materially to take a step which would otherwise have been easily avoided. We are unable to conceive of any other case where a court of equity would be impotent to grant relief to the party so misled; and, conceding the full claim made as to the character and authority of a properly examined and authenticated bill of exceptions, we. are unwilling to believe that there is either sound reason or authority against the power of the court to grant relief in the manner prayed for in the present bill. The case falls directly within the doctrine of equitable estoppel. This doctrine, as stated by Mr. Pomeroy, in section 804 of volume 2 of his work on Equity Jurisprudence, "is the effect of the voluntary conduct of a party, whereby he is absolutely precluded both at law and in equity for asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith  -

relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This principle has been applied by the courts in many cases called to our attention. In *Montgomery* v. *Heilman,* 96 Pa., 44, it was held that a party was precluded from raising the question of jurisdiction of the lower court in the face of an express agreement to waive this question. In the course of the opinion it is said: "It may be conceded that this cause of action was not within the jurisdiction of a justice of the peace. It is equally true that consent cannot give jurisdiction, so as to prevent objection being made in the future·trial of the cause. It is not, however, obligatory upon a party to interpose such objection. . . . It is urged that the record showed want of jurisdiction. The record showed a waiver of that question and an agreement to try the case on its merits. . . ." With a full knowledge of the law, by his express agreement, the plaintiff in error induced the defendant in error to incur the costs and expense of a trial and a prothonotary to render their services for which the statute gives them fees. He invited the judgment to be entered against him. Can he thus trifle with two courts and also escape the application of equitable estoppel? We think not.

In *Potter* v. *Myers,* 31 Ohio St., 103, involving questions similar in some respects to the one with which we are at present dealing, in the course of the opinion the

court said, with regard to an entry on the journal of the trial court, consented to by the parties, showing that the bill of exceptions was duly permitted: "If such an entry shall be put upon the journal surreptitiously, it ought to be set aside. Perfecting a bill of exceptions is a matter which concerns both parties, and both ought to have the opportunity of examining it, if desired, before it is finally settled. But, where parties have consented to a journal entry during the term showing that the bill was duly perfected, they will be estopped from afterward showing that the entry is untrue."

In *Ridgway* v. *Morrison*, 28 Ind., 201, this is said:

"Lord Coke says: 'An estoppel is where a man is concluded by his own act or acceptance to say the truth.' The principle is that the acts and admissions of a party operate against him in the nature of an estoppel where in good conscience and honest dealing he ought not to be permitted to gainsay them. This is called an estoppel *in pais*. As a general rule a party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence, and when such denial will operate to the injury of the latter. *Welland Canal Co.* v. *Hathaway*, 8 Wend. (N. Y.), 480, 24 Am. Dec., 51; *Dezell* v. *Odell*, 3 Hill, 215, 38 Am. Dec., 628; 2 Smith, D. D. Cases L. C. 581, 619, 642; *Ray* v. *McMurtry*, 20 Ind., 307, 83 Am. Dec., 322. Here it appears by the finding of the court that the trial of the case was concluded on the 29th day of July, 1865; that the court to which the cause was

Gas & Electric Co. v. Simpson.

submitted was then prepared to decide it, and would have announcel the decision at that time, but for the agreement of the parties that the judge should then sign the order book containing the proceeding of the court in the case, leaving a blank space over said signature, and take the case under advisement, and, when decided, the judgment should be recorded in such blank space as of the day on which said trial was concluded. . . .

"By his own act and agreement, that the judgment when given should be entered as of the day on which the trial was concluded, the appellant induced Morrison to agree that the judge should hold the case under further advisement. The postponement was made, too, for the accommodation of the appellant alone; and now to permit him to deny that the judgment was entered on the day it bears date would be an injury to Morrison and in violation of good conscience and honest dealing. He is therefore estopped from controverting the verity of the record. Besides, the judgment is regular on its face, . . . and in the absence of fraud is conclusive upon the parties."

Among other cases applying the same principle are *Reichenbach et al.* v. *Ruddach,* 15 Atl., 488, 121 Pa., 18; *Winona Paper Co.* v. *First Nat'l Bank,* 33 Ill. App., 630; *Lederbrand* v. *Pickerell et al.,* 167 Ill., 624, 49 N. E., 192; *Lane et al.* v. *Partee,* 41 Ga., 202.

In some of these cases it may be said that the several courts disposing of them have carried the principle fur-

ther than, under our practice, we would feel warranted in going; but all are cited to show the readiness with which relief is afforded by a court of conscience against a breach of faith threatening the complaining party with irreparable injury, under the doctrine of equitable estoppel.

And this rule, which precludes the attorney, equally estops the client. As has been seen, the agreement in question was made in open court, in the act of preparing the law case for appeal, where the client was as much represented by his attorney as at any point of time from the institution of the suit. That the attorney then stood for his client does not admit of doubt. What he did in conducting the cause his client did, and his agreement was that of the client. This is nowhere better stated than in the opinion of the court in *Kent* v. *Ricards*, 3 Md. Ch., 392, an extract of which we make with approval: "The question here has reference to the power of an attorney over the conduct of the cause, and it is believed to be indisputable that his authority in this respect is coextensive with that of his client. No one will deny that an attorney may agree not to demand a judgment, or may stipulate for a *cessat executio* upon a judgment when rendered, and that any violation of his agreement in either of these particulars will give the opposite party the same title to relief as if the agreement was made with the express authority of his client. It was decided by the court of appeals in the case of *Henck* v. *Todhunter*, 7 H.

& J. (Md.), 275, 16 Am. Dec., 300, 'that by the law and practice of the courts of this State a party might appear either *in propria persona* or by attorney, and whenever the appearance of an attorney is entered in a record it is always considered that it is by the authority of the party, and whatever is done in the progress of the cause by such attorney is considered as done by the party and binding upon him, and whether the attorney is faithful to his trust or not is a matter between him and the party, his client, to whom he is responsible for the faithful discharge of his duty.' "

This principle is recognized in *Brooks* v. *Twitchell*, 182 Mass., 443, 65 N. E., 843, 94 Am. St. Rep., 662; *Metcalf* v. *Williams,* 104 U. S., 93, 26 L. Ed., 665; *Gulf Ry.* v. *King,* 16 S. W., 641, 80 Tex., 681; *Holland* v. *Trotter,* 22 Grat. (Va.), 136; *Halliday* v. *Stuart,* 151 U. S., 229, 14 Sup. Ct., 302, 38 L. Ed., 141; and *Thompson* v. *Laughlin,* 27 Pac., 752, 91 Cal., 313.

The case of *Ballard* v. *Railroad,* 94 Tenn., 205, 28 S. W., 1088, which the appellants referred to as an authority to the contrary to the view herein expressed, does not raise the question we have been discussing. The bill in that case was filed by a complainant, seeking a new trial of a cause which had been already tried and disposed of on its merits in one of the circuit courts of the State, and the appeal in which had been dismissed by the supreme court because not perfected in time. The chancellor had dismissed the bill on demurrer, and

118 Tenn—35

this court, in affirming his decision, merely applied the rule, well stated by Judge Gibson in his Suits in Chancery, at section 1207, in these words: "The court of chancery . . . will not grant a rehearing of a suit decided in a court of law unless, first, it be clearly shown that the judgment complained of is unjust and contrary to good conscience; and, second, that it resulted from the fraud of the other party, or accident, surprise, or mistake unmixed with negligence on the part of the complainant, or his agent or attorney."

Upon the facts stated in the opinion in that case, in the face of this rule, it was impossible to grant complainant relief. In the statement of these facts the negligence of the complainant, seeking the relief, is noted. It is there said: "While the appellee states in his bill that he did not know until the case was called in this court that the record was not made up as agreed upon, he does not allege that he might not have ascertained this fact by an examination of the transcript; nor does it appear that, by proper attention to the entries made, they might not have been made to conform to the agreement as entered into."

An effort was made by the defendants to set aside the order *pro confesso,* with a view of permitting answers to be filed by the several defendants in this cause. To this end affidavits were filed. Without stating the contents of these affidavits, it is sufficient to say that the fail to disclose a condition which required the grant-

Gas & Electric Co. v. Simpson.

ing of the motion made by them.   We are entirely sat-
isfied with the action of the chancellor upon the record.
We think his decree was warranted upon authority, and
it is in all respects affirmed.