## JOHNSON v. BRADBURY.

(District Court, D. Maine. March 26, 1921.)

No. 553.

1. **Estoppel ⬳79—Agreement need not be in writing to create equitable estoppel.**

   The rule of courts in Maine that an agreement between counsel will not be recognized, unless in writing, is limited to agreements relating to the conduct of a case in court, and has no application to the question whether a party is estopped by such an agreement from maintaining a suit.

2. **Estoppel ⬳118—By agreement between counsel not sustained by evidence.**

   Evidence *held* insufficient to establish that a conversation between counsel in a suit for construction of a will, the object of which was to establish plaintiff's title to certain land under the will, amounted to an agreement that the land might be sold by the trustee under the will, and that plaintiff would look to the proceeds, which estopped him from maintaining an action, after obtaining a construction of the will in his favor, to recover the land from the vendee, who bought with knowledge of the pending suit.

At Law. Action by James Earle Johnson against Lindley L. Bradbury. Judgment for plaintiff.

Geo. F. Gould, and Stephen W. Hughes, both of Portland, Me., for plaintiff.

Emery, Waterhouse & Paquin, of Biddeford, Me., for defendant.

HALE, District Judge. Nathan Palmer owned a farm of 75 acres in Hollis, in the county of York. He died September 25, 1865, leaving a will, under the seventh clause of which he demised the farm. He had been twice married. His second wife survived him; she died later. Her granddaughter Fredonia F. Johnson, has been held to be entitled to a conveyance of the reversion, and the plaintiff is now her sole heir. He brings this action of trespass quare clausum against the defendant,

who claims title to the property by virtue of a certain conveyance made to him by Frank L. Palmer, as trustee. On August 31, 1916, this plaintiff brought a bill in equity in the Supreme Judicial Court of Maine, in the county of York, asking the court to construe the portion of the seventh clause of the will by virtue of which the property was devised, and to have Frank L. Palmer, the trustee under the will, restrained from selling the real estate as trustee under an appointment by the judge of probate for the county of·York, claimed to have been made under the provisions of section 4, c. 78, of the Revised Statutes of Maine of 1916.

On September 5, 1916, at the hearing on a motion for a restraining order, under the bill in equity, it appeared that Frank L. Palmer, as such trustee, had already made an agreement of sale of the real estate in question to the defendant. The motion for a restraining order and for injunction was then dismissed, and the case went to the Maine court upon the construction of the seventh clause of the will. It was argued before the Supreme Judicial Court upon an agreed statement of facts. The court decided that the intent of the testator—

"was to vest a fee-simple estate, in trust, in this real estate in the said Daniel Townsend, said trust to continue until the happening of a certain event, to wit, either the death or marriage of the widow of the testator, said Nathan Palmer, Sr.; that at the happening of one of the said events, to wit, the marriage of said widow of said testator, then the trustee should have made the conveyance of the life estate to said Nathan and Moses, and to the survivor and should have conveyed the reversion to such person or persons entitled thereto, and that the trust would thereupon cease; that Fredonia F. Johnson, being the only one then alive of the persons entitled to said reversion, she was entitled to a conveyance of the whole of the reversion, and the reversion should have been conveyed and delivered over to her. Johnson v. Palmer, 118 Me. 226, 107 Atl. 291."

After this decision of the Maine court, the plaintiff, the sole heir of Fredonia F. Johnson, brings this suit. The defendant claims an equitable estoppel, which prevents the plaintiff from maintaining his suit. To prove such estoppel the plaintiff sets up a conversation between the counsel for the plaintiff and counsel for the defendant, on September 5, 1916, at the time set for the hearing before Judge Haley in the state court, in the matter of a restraining order and injunction, and the defendant contends that such conversation resulted in an oral agreement to dismiss the restraining order and injunction; that the fund obtained for the land should be substituted for the land, and that, by reason of this agreement, the parties are estopped from looking to the land; that the defendant had knowledge of the agreement, and that, by reason of the agreement, he paid the money and took his deed, thereby completing his title to the land, expecting and intending the fund to take the place of the farm; and that, therefore, the plaintiff must look to the proceeds derived from the sale of the farm, as he agreed to, and that he is equitably estopped from now maintaining this action.

[1] At the outset, the plaintiff contends that an oral agreement, even if proven, cannot be set up as an estoppel, because of a rule of courts that in the prosecution of a case in court an agreement of coun-

sel is not to be recognized unless it be in writing. Smith v. Wadleigh, 17 Me. 353, 355. I think it must be said, however, that this rule relates to the conduct of a case in court, and not to the question whether a party is prevented, by estoppel or otherwise, from maintaining his suit. The matter of estoppel goes much deeper than the question of the conduct of a suit. By an estoppel a party is precluded, in law, from alleging or denying a fact, in consequence of his own previous act. Stevens' Pleading, 239; 1 Bouvier, 526. The doctrine of estoppel in pais or in fact—an equitable estoppel—was formerly regarded as odious under the law; but as Judge Walton has said, in Stubbs v. Pratt, 85 Me. 429, 27 Atl. 341:

"This doctrine of equitable estoppel has been much extended within the last half century, and is now as freely applied in actions at law as in suits in equity."

It is undoubtedly true that they—

"should be applied with great care in each case, so that a person may not be debarred from the maintenance of a suit based upon his legal rights, * * * unless in any given case all the elements exist which have been universally held to be essential for the purpose of creating an estoppel." Rogers v. Street Railway, 100 Me. 86, 91, 60 Atl. 713, 715 (70 L. R. A. 574) ; Martin v. Maine Central Railroad Co., 83 Me. 100, 21 Atl. 740.

In Halliday v. Stuart, 151 U. S. 229, 14 Sup. Ct. 302, 38 L. Ed. 141, the attorneys of record in a suit in equity to enforce a lien on real estate made a written stipulation that the property might be sold, under the decree, pending the appeal, and the property was sold under the decree and the money paid into the court. It was held that the parties thereafter cannot be heard to say that they will look to the lands, and not to the proceeds of the sale of the lands. In that case the agreement that the funds should take the place of the land was a stipulation in writing and readily susceptible of proof.

[2] In the case at bar the alleged equitable estoppel depends in great part upon oral testimony. The defendant relies upon testimony that, when the counsel in the case in equity met for a hearing, before Judge Haley, on the question of a restraining order and a temporary injunction, it was found that there had been an agreement of sale of the land in question to the defendant, but that the sale had not been completed, and that no deed had been delivered to the defendant. Frank L. Palmer, trustee, testifies that at the hearing he produced the contract, or agreement, of sale in the presence of Judge Gould, the counsel for the plaintiff, and that he then told those present that the deed would not be delivered until the 1st of November following, and that there were $5,000 more to be paid. Judge Gould then consented that the injunction to restrain the deed to Bradbury should be dismissed, and the following entry was then made:

"Hearing on temporary injunction, September 5, A. D. 1916, and by agreement of counsel restraining order and motion for temporary injunction and permanent injunction dismissed."

In cross-examination he was asked by Judge Gould to give the exact language used when the agreement was made to look to the fund of $11,000, instead of to the land; he replied:

"It would be impossible for me to state the exact language. I do recall the substance of it, because it was of vital importance to me as to whether I should proceed with the contract or not. I do recall that you made, in substance, a remark that you didn't want to appear foolish in the matter, and do anything unnecessarily, and that you had recently learned that I had sold the property for what seemed to be a good price. And at that time it was by all parties conceded to be apparently a good price, which gave rise to Judge Haley's remark that I could probably make more money selling real estate at that rate than I could by practicing law."

Robert T. Whitehouse, of counsel for the defendant, testifies that, on the day of the hearing, he went to the courthouse in company with Judge Gould. In answer to interrogatories he testifies further:

"Q. Will you state what was said by you and him on your way to the courthouse to attend that hearing?

"A. Why, I cannot remember exactly. I can remember in substance this much: That I said to Judge Gould: 'Why do you insist on this motion?' I said: 'He has already made a contract for the sale of this property at a good price.' And he says: 'Has he already sold it?' I says: 'He has a contract for the sale.' He says: 'I don't think it is a fair price. The price required in the authority to sell is only $6,000.' I says: 'The contract is for $11,000.' 'Well,' he says, 'I don't like the way this man Palmer has acted in not giving me notice.' And I said: 'I think he gave by publication, and that is all that is required. And I don't know as he knew of your existence as trustee.' That much I remember.

"Q. Now, later, did you assemble at the courthouse in Judge Haley's chambers?

"A. Later we gathered there in Judge Haley's chambers—Judge Haley, Judge Gould, Mr. Palmer, and myself.

"Q. Now you may state what was said by you, or Brother Palmer, or Brother Gould, in the conference, and what was done?

"By Mr. Gould: Subject to objection.

"A. I remember Brother Gould saying that it was proposed to sell this property; that there was authority to sell this land for $6,000, but he was not informed that they had made a contract for the sale and were to get a much larger price. And I think I said to Mr. Palmer: 'Mr. Palmer is here, let him state the facts.' And Mr. Palmer drew from his pocket the contract and stated the terms. I don't know sure; I don't think he read it verbatim; but he stated the terms of the contract and the dates of payments, and I think he stated that no deed had yet been passed. I don't recall whether Judge Gould took the document in his hands or not; I don't recollect about that. Then it is my recollection that I said, in substance: 'Why do you try to stop this sale? Why not let it go on, and let the proceeds be substituted for the land, and then you will have only the disposition of the proceeds to consider?' And Judge Gould made some remarks like this: 'Well, your honor, I am not in the habit of chasing around foolishly; all right, I will agree to the dismissal of the motion for a permanent injunction.' And Judge Haley thereupon, I think, made a memorandum of entry of dismissal by consent of parties. * * *

"Q. After the docket entry was made on the Supreme Court docket that the permanent and temporary injunction be dismissed, you proceeded and went to the law court on the question of the interpretation of the seventh clause of the Nathan Palmer will?

"A. We did. It was the main object of the suit. My brief expressed my understanding of the agreement as I have stated it.

"Q. And you so embodied it, did you? A. Yes.

"Q. Have you stated fully the facts that you remember in regard to the conversation?

"A. Well, it is all I think of. There might be some things that would come to my mind, were my recollection refreshed. * * *"

In cross-examination:

"XQ. If Mr. Palmer, as trustee, had sold the property, the court could not enjoin him from selling it, could they?

"A. No; but your permanent injunction and motion could have been very easily modified, as it was not too late for such relief as you were seeking.

"XQ. I was seeking two things: First, to construe the will; and, second, to stop him from selling the property?

"A. Originally; certainly. * * *"

Judge Gould testifies:

"In September, 1916, Brother Whitehouse, Mr. Palmer, and myself met in Judge Haley's chambers. Either just before we went into the chambers, or just after, I am not sure which, Brother Whitehouse said: 'That property has been sold.' And, as I recall it, he added: 'You are too late for your injunction.' Or some words which conveyed that impression to my mind. * * * What he said conveyed the idea to my mind that the property had been sold, and it was therefore too late to get that preliminary injunction. That was repeated in Judge Haley's presence, and there was some good-natured talk between Judge Haley and Brother Whitehouse and myself relating to the granting of an injunction to prevent the doing of an act that had already been done. * * * I have no recollection of ever knowing the terms of the sale until a long time after the matter was in litigation. I certainly said nothing, and intended to say nothing, to give any one the idea that we would look to that fund."

The court then inquired:

"You have heard the testimony touching what was said about having the money take the place of the land? Did you make such a statement?"

Judge Gould replied:

"I am absolutely certain I made no statement of that kind. I certainly never had it in my mind. I had no intention of doing it. I had no authority to do it, and I had no intention of doing it."

The briefs of both counsel in the hearing on the bill in equity, before the Supreme Judicial Court of Maine, are offered in evidence. Judge Gould, in his brief, used these expressions:

"And the question for decision is: What are the rights of the parties to this bill in and to the original homestead farm, or to the proceeds now in the hands of Frank L. Palmer, trustee, arising from the sale of said farm, amounting to $11,000: * * * Plaintiffs contend that the same principles of law apply, and that these plaintiffs are owners of said farm in fee, subject only to the life estate of Moses in one-half thereof."

In his reply brief he says:

"The plaintiffs suggest * * * that the plaintiffs, as heirs to Fredonia, are entitled to immediate payment of one-half of the fund now in the hands of the trustee, and the payment of the balance upon the death of Moses without children."

In the defendant's brief Mr. Whitehouse says:

"The only relief sought of the court by either plaintiffs or defendant is a decree construing the will and determining to whom the fund which constitutes the proceeds received from the sale of the homestead, under the authority of the statute, of the probate court, and now held by said Frank L. Palmer, as trustee, shall be apportioned," etc.

Also:

"Whether, upon the death of Moses, with or without a child, the fund in the hands of Frank L. Palmer, trustee, shall be paid over to the plaintiffs, or be, distributed among the grandchildren of the testator," etc.

He further alludes to the proceeds from the sale now held in lieu of the reversion. And again:

"Then by the express terms of the will the reversion of a fund, held in lieu thereof, should be distributed among all the testator's grandchildren now living."

These expressions, in the briefs of counsel, are of substantial probative value. They are formal expressions in writing by the parties on either side tending to show the intent in the conversation before Judge Haley. It is urged by the defendant that they clearly point to an agreement that the plaintiff should, if successful in the suit, look only to the funds derived from the sale of the land, instead of to the land itself. But it is urged by Judge Gould that there were certain proceedings in the probate court which, if held to be valid, would compel the plaintiff to look to the funds only, and that this idea is carried out in the last part of his brief, where he says:

"Plaintiffs contend that the same principles of law apply, and that these plaintiffs are owners of the said farm in fee, subject only to the life estate of Moses in one-half thereof."

The defendant's counsel also speak of these probate proceedings. The defendant's brief plainly refers to an alternative, as to "rights of the parties to the original homestead farm *or* to the proceeds."

It seems clear that, while these expressions in the briefs are of probative value, and tend to show that the thought was in the minds of the parties to look to the fund, instead of to the land, it is not clear that the citations lead inevitably to the conclusion that there was a distinct agreement to look to the funds alone.

The question whether the conversation before Judge Haley should be held to have resulted in an agreement is a somewhat difficult question of fact. In finding precisely what was said, we have to rely upon the memory of witnesses whose veracity is beyond question. It is not suggested that either Judge Gould, or Bank Commissioner Palmer, or Mr. Whitehouse, a former eminent district attorney, would in any way vary from what each regards as the truth. Mr. Whitehouse says himself that his memory is not altogether clear as to the whole conversation. In passing upon the question of whether an agreement has been concluded, courts are accustomed to consider the character of the contract, and whether from its nature it would be expected to be in writing, or whether the parties would be likely to rely upon a verbal contract. In Steamship Co. v. Swift, 86 Me. 248, 259, 29 Atl. 1063, 41 Am. St. Rep. 545, the court of Maine, in deciding that certain letters and other oral evidence failed to constitute a formal agreement, was influenced by the fact that the contract was of a class usually found to be in writing; that it involved a large sum of money; that it was of a nature to suggest a formal writing for its full expression. And,

in the opinion of the court, Judge Emery discusses these considerations with great force, referring to Rossiter v. Miller, 5 Ch. Div. 648.

In the case at bar the counsel were lawyers of experience. They were dealing with a case in court, involving a substantial amount in controversy. The substitution of the fund for the real estate is testified by Mr. Palmer to have been a matter of "vital importance"; it must have been so considered by all the parties. We should expect that if, as a result of the conversation, the parties had agreed upon any course different from the ordinary proceeding in the case, the first thing that would have occurred to them would have been to make a stipulation of their agreement, as was made in Halliday v. Stuart, 151 U. S. 229, 14 Sup. Ct. 302, 38 L. Ed. 141.

The talk was in the presence of the court; and, if counsel did not propose a stipulation, it would have been within the usual practice of courts for Judge Haley to suggest, and even require, such stipulation. Even if a matter of so vital importance got by counsel and court, and eluded a stipulation at the hearing, it is difficult to see how it escaped the agreed statement, nine months later, when the case was made up for the law court. When we examine the agreed statement, and find in it a reference to the sale of the original homestead, and find, also, a reference to the petition in the probate court relating to the real estate, we should expect that, if an agreement had been made to substitute the fund for the farm, a matter so affecting the final judgment would have been made a part of the formal statement of the case.

The whole testimony is, in my opinion, an insufficient basis upon which to found a formal decree that an agreement was made to substitute the fund for the land. Judge Gould denies with positiveness that he made any statement that he would look to the fund, instead of to the land. In view of his express denial, the court can hardly conclude that the conversation is sufficient to induce the belief that a contract was made. It appears, rather, that the decision arrived at was embodied in the entry dismissing the restraining order and injunction. While there was talk about looking to the fund alone, the fact that neither the counsel for the parties, nor the court itself, suggested that a stipulation be drawn tends to show that the parties were satisfied with the court entry, and that they left the future conduct of the suit to the ordinary proceeding in the case, thus giving the right to the plaintiff to proceed, and, in the end, to look to the real estate for his judgment, in the ordinary way, or to avail himself of the fund if the probate proceedings should compel him to do so, or if there should be a subsequent agreement to do so. It does not appear that the defendant was estopped or precluded, by anything said or done at the hearing.

When the defendant took his quitclaim deed from Frank L. Palmer, he is charged with knowledge of the suit in equity; he must have known that the plaintiff claimed to own this land; that there was a deed from the trustee under the will of Moses Palmer to the plaintiff; and that the suit was to try the title on this very piece of property. He was chargeable with notice of the character of the suit and of the

extent of the claim asserted. He knew, then, that he took his chances as to the result of the litigation. He was not misled by anything said or done by counsel for the other side. His counsel were present at the hearing before Judge Haley, and, if they required his rights to be protected by a formal agreement, it was open to them to insist that a stipulation be filed, putting in writing what they supposed to have been intended by the conversation. The court can find no case for the application of the doctrine of equitable estoppel.

I am of the opinion that the testimony is insufficient to establish a contract for the substitution of the fund in place of the real estate. Judgment must therefore be for the plaintiff.

I find on file a stipulation, relating to the assessment of damages.