MODEL CLOTHING COMPANY, Respondent, v. COLUMBIA TRANSFER COMPANY, Appellant.

**St. Louis Court of Appeals, June 30, 1911.**

1. **COMMON CARRIERS: Connecting Carrier: Transfer Companies.** A drayage and transfer company, which carries goods between St. Louis and East St. Louis, transferring them between railroads which have no other connection, and receives compensation out of the freight collected by the final carrier, is a common carrier of goods, and liable as such.

158 App.—31

2. **EVIDENCE:** Market Value: Qualifications of Witness. Where, in an action against a carrier for delay in a shipment of hats, two witnesses testified that they had had a general experience in buying and selling such hats and were familiar with their market value at the place of delivery at the time in question, their testimony was not rendered incompetent by statements made on cross-examination that their statement as to the market value when the goods arrived was based on the fact that that was all they would have paid for the goods at that time, and that they had made no efforts to get the actual value from local jobbers and did not know what it was; their statements on cross-examination merely going to the weight of their testimony.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Ryan & Thompson* for appellant.

The defendant company was not a connecting carrier, and accordingly the judgment of the court should have been for the defendant. Railroad v. Young, 25 Neb. 651; Roach v. Railroad, 1 Manitoba 158; Cooper v. Railroad, 27 Wis. 81; Railroad v. Scroggin and Brown, 90 S. W. 521 (Texas); 6 Am. and Eng. Ency. of Law, 604-605; Hutchinson on Carriers, sec. 247.

*Morris G. Levinson* and *Adolph Abbey* for respondent.

(1) A connecting carrier is one whose route, not being the first one, lies somewhere between the point of shipment and the point of destination. Nanson v. Jacob, 12 Mo. App., affirmed 93 Mo. 331; Lawson on Carriers, 342. (2) There is no rule of law, and there can be none, defining how much a witness shall know of property before he can be permitted to give an opinion of its value. He must have some acquaintance with it, sufficient to enable him to form some estimate of its value, and it is for the jury to determine how

much weight to attach to such estimate.    Bedell v.
Long Island R. Co., 44 N. Y. 367; Smith v. Halbrook,
16 Alb. Law J. 33.    (3)    Market price may be deter-
mined by offers to sell, made by dealers in the ordi-
nary course of business, as by actual sales.    Harrison
v. Glover, 72 N. Y. 451.

STATEMENT.—Action against an alleged connect-
ing carrier to recover damages for negligently delay-
ing delivery to the succeeding carrier.    The plaintiff
had judgment and the defendant has appealed.    The
shipment was of hats and was received from the con-
signor by the initial carrier at Philadelphia, Pa.; con-
signed to the plaintiff at Dallas, Texas.    The route
included the line of the Big Four Railroad Company
as connecting carrier and the line of the M. K. & T.
Railroad Company as final carrier.    There is nothing
in the record to suggest that the initial carrier con-
tracted for through liability or that the circumstances
created a through contract, or that there were any
instructions of the shipper or agreement as to route
or connecting carriers or any instructions or agree-
ment that the Big Four would deliver to the M. K. & T.
One of the conditions of the bill of lading set forth lim-
its the liability of the initial and connecting carriers
each to injuries occurring on its own line.    The Big
Four terminates at East St. Louis, Illinois, and the
M. K. & T. commences at St. Louis, Missouri.    The
Big Four has no line running into St. Louis and the
M. K. & T. has no line running into East St. Louis.
Their lines do not connect.    The Mississippi River
lies between them, crossed by bridges and ferries. The
custom when less than carload shipments were brought
to East St. Louis by the Big Four consigned to a point
on the M. K. & T. Railroad Company's line was for
such shipments to be delivered to any one of several
transfer compannies, including the defendant, for
transportation across the Mississippi River and deliv-

ery to the M. K. & T. in St. Louis. In such cases the Big Four would select the carrier to transport the shipment across the river and the M. K. & T. would pay for such service out of its share of the through rate. The defendant company is a common carrier doing a general drayage and transfer business by wagon. The shipment in this case commenced in Philadelphia on March 2, 1906, and was promptly carried by the initial carrier and the Big Four to East St. Louis, where on March 9, 1906, it was turned over by the Big Four to the defendant for transportation across the river and delivery to the M. K. & T. in St. Louis. The defendant negligently detained the goods and failed to deliver them to the M. K. & T. until June 19, 1906, on which day the goods were delivered to the M. K. & T. and promptly carried by it to Dallas, Texas, where on June 26, 1906, they were received by the plaintiff under protest, having been unnecessarily and negligently delayed three months and ten days. Two witnesses testified on behalf of plaintiff as to the difference between the market value of the goods when they should have been received and their market value at the time of their delivery, one saying that it was from thirty-three and one-third per cent to fifty per cent, or from $211 to $316.50, and the other that it was fifty per cent or $316.50. The defendant offered no evidence. The trial was to the court and without any declarations of law being asked or given, the court found for plaintiff and rendered judgment in its favor for $290.00.

CAULFIELD, J. (after stating the facts).— I. Defendant contends that it was not a connecting carrier but was merely the agent of the M. K. & T. Railroad Company or of the Big Four Railroad Company and liable to respond for non-performance of its duty only to its principal. This contention cannot be sustained in the state of the record before us. The

mode of transportation adopted by the defendant and the length of its route did not affect its character as a connecting carrier. Its route lay between the point of shipment and the point of destination and was necessary to close the gap between the Big Four and the M. K. & T. It was necessary to constitute the route over which the shipment was to pass and it participated in the shipment. In every respect it answers the description of a connecting carrier. [Nanson v. Jacob, 12 Mo. App. 125; Am. and Eng. Ency. of Law (2 Ed.), vol. 6, p. 604.] Defendant cites certain cases in support of its contention: Mo. Pac. Ry. Co. v. Young, 25 Neb. 651; Roach v. Canadian Pacific R. R., 1 Manitoba, 158; Hooper v. Chicago, etc., R. R. Co., 27 Wis. 81, and Texas & Pacific Ry. et al, v. Scroggin, 40 Tex. Civ. App. 526, 90 S. W. 521. But in each of those cases the defendant claimed freedom from liability because of delivery to the next connecting carrier and was held liable because it was itself bound to do the very carrying and make the very delivery out of which the controversy in suit arose, and had employed the so-called "connecting carrier" to do such carrying and make such delivery as its mere agent. In each of those cases the route over which the defendant was bound to carry the goods included that of the so-called connecting carrier upon whom it would shift liability. Not so in this case. The route of the Big Four and its duty to carry ended at East St. Louis; that of the M. K. & T. began at St. Louis. The defendant was the connecting carrier between the two.

II. The defendant asserts that there was no competent evidence in the entire record to show that the market value of the goods in Dallas at the time the shipment should have arrived was greater than their market value when they did arrive. It contends that therefore there is no competent evidence in the record to support the judgment. The two witnesses, one the

president of the plaintiff company and the other its buyer and salesman, testified that they had had a general experience in buying and selling Panama hats and were familiar with their market value in Dallas at the times in question. Each stated what such market value was. On cross-examination the president testified that his statement as to the market value when the goods arrived was based on the fact that that was all he would have paid for them at that time; that he had made no investigation to ascertain the market price. On cross-examination the buyer stated in effect that by market value he meant the price at which they could have been purchased. He testified that he made no effort to get the actual value from local jobbers and did not know what it was; that he had not inquired in Dallas to ascertain just what the market value was; but that he thought he could have bought goods of equal quality and value for $320 in the Dallas market on the day the goods arrived. That he had done all his purchasing of Panama hats from importers and had never bought them in Dallas.

We do not believe that the testimony of these witnesses as to market value should be rejected because of their answers on cross-examination. They were experienced dealers in hats and testified positively that they knew the market values in question and what they were. Their answers on cross-examination merely tended to diminish the weight to be given to their testimony by the trier of the fact and did not as as a matter of law destroy its probative value. [Costigan v. Michael Trans. Co., 38 Mo. App. 219.]

The judgment is affirmed. *Reynolds, P. J.*, and *Nortoni, J.*, concur.