JOHN T. NANSON ET AL., Respondents, *v.* ROBERT JACOB ET AL., Appellants.

April 18, 1882.

1. A carrier who does not receive the goods from the preceding carrier under and by virtue of the original contract for through transportation, is not a connecting carrier.
2. A carrier who delivers goods for a tortious bailee, without notice that the bailee's possession is wrongful, is not liable to the owner for a conversion.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed and remanded.*

S. M. BRECKENRIDGE, with whom is M. F. WATTS, for the appellants.

ALBERT ARNSTEIN, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

In December, 1879, S. & F. Uhlman, hop dealers, resident in the city of New York, sold one hundred and fifteen bales of hops to defendant Robert Jacob, a St. Louis dealer, and shipped them over the Red Transit Line, whereof the Wabash Railway was the terminal connecting road. The bill of lading was attached to a draft for the purchase-money, which was sent to a bank in St. Louis, with instructions to deliver the bill of lading to Jacob upon his paying the draft.

About that time Jacob became insolvent, and failed to

pay the draft, which, with the bill of lading, was afterwards returned to New York.

The goods were consigned to the order of the Uhlmans, with instructions to the carrier to notify Jacob. Upon their arrival at East St. Louis, the Wabash Railway sent a notice to Jacob, to the effect that the hops, as described, consigned to him, were ready for delivery, on payment of the freight and charges. The notice further stated that, if the hops were not removed within forty-eight hours, there would be an additional charge for storage. On the back of the notice was a blank order, to be signed by Jacob and filled in with the name of the person to whom the hops were to be delivered. This was addressed to "Agent, Wabash Ry." Jacob thereupon bargained with defendant, the St. Louis Transfer Company, to haul the hops from the depot and deliver them to the Schneider Brewing Company, in St. Louis. He filled and signed the order accordingly, and gave it to the transfer company with a check for payment of the freight-bill held by the Wabash Railway. Upon presentation of the order, and payment of the freight-bill for transportation from New York, the Wabash Railway delivered the hops to the transfer company, with a "manifest" showing the amount of the freight-bill. In this paper the hops were mentioned as being consigned "to the order of S. & F. Uhlman." They were eventually delivered to the Schneider Brewing Company. The Uhlmans afterwards assigned whatever claim they might have on account of the foregoing transactions, to the plaintiffs.

This proceeding is in the nature of an action of trover, to recover damages for the unlawful conversion of the hops. It was instituted against Jacob, the Transfer Company, and the Wabash Railway, but was dismissed before the trial, as to the Wabash Railway. There was a verdict for $4,186.30 against the other defendants.

Part of the plaintiff's argument for holding the St. Louis Transfer Company liable in this action, assumes that it was

a joint *tortfeasor* with defendant Jacob in wrongfully taking possession of the hops while they were still the property of the Uhlmans, upon whose order, only, there could be a proper delivery. Another part of the same argument makes the Transfer Company a connecting carrier in the entire transportation, and therefore bound by the terms of the bill of lading, and liable for a misdelivery. The two positions are inconsistent. If the Transfer Company was a wrong-doer in receiving the goods, then it could not have been a connecting carrier, because, in that capacity, it would have had a perfect right to receive them. If, on the other hand, it was a connecting carrier, then no complaint can be made of its taking possession of the goods, whether upon the order of an unauthorized person or otherwise. The simple truth is, that the Transfer Company either was a connecting carrier or it was not. If it was such, then it became, by the terms of the bill of lading, a party to that contract, and might be held liable for a delivery not in accordance with its con-ditions. If it was not so, then its undertaking was a wholly independent one, and its responsibility must be measured by the general law of common carriers, without any refer-ence to the bill of lading, or any conditions of the ante-cedent through transportation.

We think the testimony in the case clearly establishes the fact that the transfer company was not a connecting carrier. A connecting carrier is one whose route, not being the first one, lies somewhere between the point of shipment and the point of destination. It becomes such by virtue of the agreement between the consignor or shipper and the first carrier, whereby the latter undertakes to deliver the ship-ment at its ultimate destination, and thus makes the carrier beyond its own route its agent for continuing the transpor-tation, or else undertakes only to deliver the goods safely to the next carrier on the route, who thus becomes the agent of the shipper for carrying them further. Lawson on Car-riers, 342. The evidence here shows that no such relation

existed between the transfer company and the shippers, or any carrier on the route. The destination had already been reached, and there was an end of all connecting carriers in the case. There can be no connecting carrier who does not, *as such*, receive the goods from the last preceding carrier acting under, and by virtue of, the original contract for through transportation. The Wabash Railway did not deliver the hops to the transfer company, nor did the transfer company receive them, with any reference to a further transportation to the point of destination. It was assumed on all sides that the end of the route was reached, and that there was a delivery to the consignee at the proper place. The transfer company was considered as the mere agent or servant of the supposed consignee in accepting the delivery at the terminus of the transportation. The Wabash Railway, speaking for the Red Line Transit, had notified Jacob, in effect, that the carrying was completed, as undertaken, and that the goods were ready, not for further transportation, but for *delivery*. Payment of the freight-bill was demanded, as upon a consummated contract. Jacob — and not the Red Line Transit or the Wabash Railway — selected the Transfer Company as *his* agent or servant to accept the proffered delivery. The fact that it was also a public carrier did not divest it of that agency for the time being, or create any connection for it with the Red Line Transit Company. Jacob paid the Transfer Company for its services, and this payment was never claimed by the Red Line Transit Company, as being incorporated in its contract for through transportation. In short, none of the parties who were competent to make the Transfer Company a connecting carrier seem ever to have thought of such a thing; nor was it possible for them to do so, when that company first appeared upon the scene.

The part taken by the St. Louis Transfer Company was, therefore, an independent and separate undertaking, having no relation whatever to the bill of lading under which the

through transportation had been performed. The company was in the position of a common carrier who receives goods from a party in undisputed possession, and delivers them according to the instructions of his bailor. If the bailor's possession was wrongful, or the act of bailment tortious and injurious to a third party, must the carrier, without any notice of such facts, be held liable to the person injured? The books are full of decisions to the contrary.

The business of common carrying for the public benefit could not exist a day, if the carrier were compelled to take all risks of ownership and fair dealing in his employers, and be subjected to liability for their misfeasances, however unknown to, or unsuspected by, him. Possession of personal property is *prima facie* evidence of ownership in the possessor. There are cases in which this *prima facie* evidence will not avail to protect a party, innocent of wrongful intent, against the true owner who is equally innocent. But common carriers, because of the nature of their business, and because they are compelled by law to receive and carry whatever is properly tendered for that purpose, have long been made an exception to many of the stringent general rules. *Fowler* v. *Hollins*, L. R. 7 Q. B. 616; *Hiort* v. *Bott*, L. R. 9 Exch. 86; *Smith* v. *Colby*, 67 Me. 169; *Strickland* v. *Barrett*, 20 Pick. 415; *Loring* v. *Mulcahy*, 3 Allen, 575; *Hills* v. *Snell*, 104 Mass. 173.

In this case, the Wabash Railway had the property in lawful possession. By its notice to Jacob, its acceptance of his order, and its delivery to the Transfer Company for Jacob, it was the real and only party who violated the terms of the bill of lading by which it was bound. The Transfer Company had a perfect right to put faith in the acts of the Wabash Railway, as a proper exercise of its authority and dominion over the property in its possession. The memorandum on the manifest was of no weight whatever against the deliberate acts of the party who had placed it there. The numerous authorities cited for the plaintiff would be

strictly in point, if this were an action against the Wabash Railway for a misdelivery. But we cannot find in them the slightest application to fix a liability on the Transfer Company in the circumstances of the case.

Excepting as to the question of liability in the St. Louis Transfer Company, under the pleadings and proofs, and as to the instruction which identified the company's responsibilty with that of defendant Jacob, we find no material error in the treatment of the cause by the circuit court. The judgment is reversed and the cause remanded. All the judges concur.