ROBERT C. WHITE LIVE STOCK COMMISSION
COMPANY, Respondent, v. CHICAGO, MILWAU-
KEE & ST. PAUL RAILROAD COMPANY, Appel-
lant.

Kansas City Court of Appeals, March 4, 1901.

1. **Railroads: COMMON CARRIERS: CONTINUOUS LINE.** Where·
several common carriers form a continuous line and contract to·
carry goods through and divide the compensation among themselves,
they are jointly and severally liable to the shipper for any loss on·
the whole line.

2. ———: ———: ———. Evidence reviewed and held insufficient to·
show that the defendant and the Soo road constituted a continuous
line or that the defendant, at the time of receiving certain cattle·
knew that the Soo road had issued bills of lading on said stock to·
one P, or that he had transferred the same.

3. ———: ———: BILL OF LADING. A bill of lading is the rep-
resentative of the property mentioned therein; and its transfer and
delivery transfers such property, and the consignor loses control of·
the goods by such transfer.

4. ———: ———: POSSESSION OF PERSONAL PROPERTY. Pos-
session of personal property is prima facie evidence of ownership.

5. ———: ———: POSSESSION: CONVERSION: CONTRACT. A
common carrier must accept freight from every one offering the·
same; and is not guilty of conversion in accepting freight from a·
party in possession thereof, unless the true owner intervenes before
the goods are delivered and demands them; and its contract with
such party in possession as to its non-liability for loss in loading,·
etc., is valid.

6. ———: ———: LIVE STOCK: INTERSTATE LAW: CONVER-
SION. P shipped on the Soo road two cars of stock to S, the junc-
tion with the defendant road. The Soo issued him a bill of lading·
which he transferred to the plaintiff and drew on it in favor of his·

home bank. He accompanied the cattle as the person in charge. At S he contracted with the defendant in his own name as consignor and consignee for the shipment of the cattle to K. The defendant in its contract limited its liability for loss in loading, etc. At G on defendant's line, P ordered the cattle unloaded under the interstate commerce act for feed, water and rest. While so unloaded he sold one half of them and reshipped the remainder under the contract. *Held*, there was no privity of contract between plaintiff and defendant, and defendant is not liable for the cattle sold by P.

Appeal from Jackson Circuit Court.—*Hon. Chas. L. Dobson,* Judge.

REVERSED.

*Frank Hagerman* and *Willard P. Hall* for appellant.

(1) No conversion by carrier in transporting for, and delivering to, party wrongfully in possession thereof, cattle or other property, if ignorant of the true ownership. Nanson v. Jacob, 93 Mo. 340. (2) Defendant received cattle from Pierson as owner in good faith, ignorant of plaintiff's claim or right, and made contract with him for their transportation and delivery to him. (3) If defendant did know the entire previous history of the shipment, it had the right to assume that Pierson was the plaintiff's agent and as such in charge of the cattle. Railroad v. Jurey, 111 U. S. 584. (4) If defendant had the right to permit Pierson to feed, water and care for the cattle, this ends the case, because defendant did nothing more. (5) There was a total failure of proof.

*W. O. Thomas* and *R. B. Garnett* for respondent.

(1) The defendant, having taken upon itself the shipment of the cattle with full notice of plaintiff's rights therein

as owner, under terms of the original bills of lading, issued by
the "Soo road," became bound to deliver, in accordance with
those terms, at Kansas City, and can not excuse non-delivery by
its contract with Pierson.   The Thames, 14 Wall (U. S.) 98;
Nanson v. Jacob, 93 Mo. 339, bot.; Bank v. Railroad, 132
Mo. 493; Hutchinson on Car. (2 Ed.), sec. 130 and citations;
McEwen v. Railroad, 33 Ind. 368; Hale on Bailments and
Car., pp. 546 and 547, and citations.   (2) Appellants con-
tend that there was no written contract of shipment by bill of
lading or otherwise, in which case the liability of appellant is
under the implied contract, which the law attaches to their
acceptance of the shipment, which is that of an insurer of the
goods.   Hutchinson on Car. (2 Ed.), sec. 4 and citations.   (3)
The authorities cited in fifth subdivision of appellants' brief
might be applicable if this suit was against the "Soo road."
Counsel here evidently mistake the contention of plaintiff at
the trial and the views of the learned trial judge.   It was not
the issuance of bills of lading by the "Soo road;" it is the law
which imposes the duty to deliver upon common carriers.   The
act of Congress provides that in case no provision is made for
watering and feeding by the owner, such acts shall be attended
to by the railroad company.   R. S. U. S., sec. 4387.

SMITH, P. J.—The petition states in substance that on
the sixteenth of May, 1896, the defendant, in the usual course
of business, received from the St. Paul & Sault Ste. Marie
Railway Company at Minneapolis, in the State of Minnesota,
two carloads of cattle, ninety-six in number, the property of
the plaintiff, consigned to plaintiff at Kansas City, in this
State, for transportation and delivery at its station at the said
city last named; that defendant failed to deliver to plaintiff
forty-six head of said cattle, which were of the reasonable value
of six hundred dollars, to the damage of the plaintiff, etc.   The

defendant answered, denying each and every allegation of the petition.

The case was tried before the court without a jury upon an agreed statement of facts, from which it appears that one Frank Pierson was the owner of ninety-four head of cattle which he intended to ship to Kansas City to be there sold for him by the plaintiff, a commission merchant; that he thereupon delivered a part of said cattle for shipment to the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, commonly called the "Soo road" at Belgrade and the remainder at Paynesville, both of said stations being in the State of Minnesota; that the said Pierson entered into a written contract with defendant relating to the said shipment; that defendant also issued to said Pierson two bills of lading for said shipment; that the said Pierson on receiving the said bills of lading took them to a bank, where he drew a draft in favor of said bank on the plaintiff, with said bills of lading attached, for the sum of nine hundred and forty-six dollars and fifty cents, which was forwarded by said bank to Kansas City, where it was paid by plaintiff; that Pierson accompanied the shipment; the agreement set forth in the contracts was to the effect that the defendant was to transport the said cattle to Shoreham Station at the rate of tariff given, subject to the conditions therein specified.

Subjoined to the acknowledgment of the receipt contained in each of the bills of lading was the following:

| Marked. | Articles. | Weight. |
|---|---|---|
| Robt. C. White Com. Co. | Stock Cattle | 20,500 |
| Kansas City, Mo. | M. L. | |

"Via C. M. & St. P. Ry., from Shoreham."

That when the two cars arrived at Shoreham—the junction of the "Soo road" and the defendant—they were switched to the track of the defendant, Pierson still accompanying the cattle therein shipped as the person in charge; that the defendant

would not accept said cars until Pierson had entered into a contract with it in respect to the shipment of the cattle therein contained; that the cars were then placed in one of its Kansas City trains, Pierson accompanying the same as the person in charge of the cattle; that when said train reached Gault, a station on said defendant's road in this State, Pierson requested the employees of defendant operating said train to permit the cattle to be unloaded for rest, water and feed, and according to such request he was permitted to unload them into the cattle pens there maintained by the defendant for that purpose; that after the cattle were unloaded, instead of keeping them in the defendant's pens and without the knowledge of the defendant's station agent, or the said train employees, he removed them to an adjoining pasture, from which place he sold and delivered to a purchaser forty-six head and returned to the cars forty-eight head, the same being all of the shipment that reached Kansas City.

Upon the agreed statement of facts the trial court concluded that the defendant was liable, and the question raised by the defendant's appeal is whether or not that conclusion shall be approved by us.

A common carrier may contract to carry beyond the end of its own line. It is very well settled that where several common carriers, each having its own line, associate and form what to the shipper is a continuous line, and contract to carry goods through for an agreed price which the shipper pays in one sum, and which the carriers divide among themselves, then they are jointly and severally liable to the shipper with whom they have contracted for a loss taking place on any part of the whole line. Shewalter v. Railroad, 84 Mo. App. 589; Wyman v. Railroad, 4 Mo. App. 35.

But in this case, the statement of the facts agreed does not show that at the time of the shipment by Pierson of the cattle

over the "Soo road" that there existed between it and the defendant any traffic arrangement, joint agreement, association or partnership for the formation of a continuous line, or to carry goods or live-stock for an agreed compensation to be divided between them. It does not appear that the defendant received said two cars of cattle from the "Soo road" in pursuance of any contract of the latter with Pierson, nor that Pierson prepaid the charges for the entire carriage from the station from where shipped to Kansas City. The contracts entered into by Pierson with the "Soo road" provided for only a State shipment from Belgrade and Paynesville in the State of Minnesota to Shoreham, near Minneapolis, in the same State. It does not even appear that the "Soo road" at the time it placed said cars on the defendant's track, or at any time, as much as delivered to defendant the ordinary transfer sheet showing from what stations the cars had been shipped, or the point of destination. The defendant, it seems, found the cars standing on its track, with Pierson accompanying them as the man in charge. It declined to receive such cars into its Kansas City train until Pierson entered into a contract for the shipment. It no where appears that either the "Soo road" or Pierson advised the defendant of the existence of said contracts and bills of lading. Nor was any reference made in the contract entered into between Pierson and defendant for the shipment of the cattle, to said "Soo road" contracts and bills of lading. It simply recites that said Pierson had delivered to defendant two "Soo line" cars of cattle to be transported from Minneapolis to Kansas City. We are unable to discover any agreed fact or facts that fairly justifies the inference that at the time the contract was entered into between Pierson and defendant for the shipment, or at any time prior to the disposal of part of the cattle by Pierson at Gault, that the defendant knew that the "Soo road" had issued said bills of lading to Pierson, or

that he had transferred the same.

By the law merchant, which is a part of the common law, a bill of lading is made the representative of the property mentioned in it and its indorsement and delivery transfers such property.   The holder of such bill holds the legal title to the goods and is entitled to all the rights of a bona fide purchaser for value.   Dymock v. Railroad, 54 Mo. App. 400; Bank v. Railroad, 62 Mo. App. 531.   And when the consignor transfers the bill of lading for value, he loses all control over the goods and has no right thereafter to give directions to the carrier with reference to their transportation.   Obert v. Railroad, 13 Mo. App. 81.   It would seem, therefore, that when Pierson transferred the bill of lading, that he parted with his right of control over the cattle or to give any further directions to the "Soo road" in relation to the transportation.   But it does not appear that the "Soo road" had any knowledge of the fact that he had transferred such bill of lading.   So far as that road was informed he was still the owner of the shipment and entitled to exercise the rights of owner.   By the terms of the bills of lading he was entitled to accompany the shipment.

In view of the foregoing considerations, we think that when the defendant found the two cars of cattle standing on its track at Shoreham, with Pierson in charge, that it had the right to enter into a separate and independent contract with him for the further transportation thereof, and to receive the same as if it was the first carrier to which such cattle had been offered for transportation, and without reference to any transaction which had taken place between the "Soo road" and Pierson.   Where one is in possession of personal property, such possession is prima facie evidence of ownership in him.   Nanson v. Jacob, 12 Mo. App. 125; Smith v. Colby, 67 Maine 169; Genley v. Armstead, 148 Mass. 267.

A common carrier is bound to accept all goods offered

him within the course of his employment, and he is liable to an action in case of refusal. New York v. Railroad, 3 Wall. 107. The trade of a common carrier is one of the few occupations which the person carrying it on is bound by law to exercise upon the requirement of a person bringing him goods to be carried, and it would be unjust that he should be bound by law to do an act which the law, in the event the person bringing the goods not being the true owner, declared to be an unlawful act. It has therefore been deemed that the carrying of goods by a carrier from terminus to terminus, upon the requirement of a person wrongfully in possession of them, is not a conversion unless the true owner intervenes before the goods are delivered and demands them. Fowler v. Hollins, 7 Q. B.—35 Victoria— loc. cit. 632. And so it has been declared that a mere bailee, whether a common carrier or otherwise, is guilty of no conversion though he receive property of one not rightfully entitled thereto and, acting as a mere conduit, deliver it in pursuance of the bailment before notice of the rights of the true owner. Nanson v. Jacobs, 93 Mo. 331. In the last cited case it was said that common carriers, by reason of the nature of their business, which imperatively requires them to receive and forward goods when tendered them in the usual course of their business, have been made an exception to the stringency of the general rules as to what constitutes, in similar cases, conversion. In Cooley on Torts, p. 534, it is stated: "It is no conversion by a common carrier or other bailee who has received property from one not rightfully entitled to possession, to deliver it in pursuance of the bailment when this is done before notice of the rights of the real owner."

The plaintiff was undoubtedly the true owner of the cattle, but of this fact the defendant had no notice. Pierson was in

the possession or at least in the apparent control of the cattle, and under such circumstances the defendant had the right to enter into the contract with him and to receive them. And until notice of the plaintiff's rights was in some way brought to defendant it was justified in regarding Pierson as the real owner. It has the right, by stipulation, to restrict and limit the responsibility imposed upon it by the common law, except as to negligence. New York v. Railroad, 3 Wall. 107. Accordingly, the stipulation in its contract with Pierson to the effect that it would not be liable for loss or damage from loading or unloading the cattle was valid and binding.

The contract contemplated that the owner or some one for him, should accompany the stock and be in charge of them. It provides that the "owner or person in charge of the stock" shall bear the expense of feeding and watering them during the transit. Pierson had contracted with defendant for the transportation of the cattle as owner. The law required the defendant, in cases of interstate shipments of this kind, to afford the owner or person in charge of the cattle suitable opportunities to unload the cattle for feed, water and rest: R. S. U. S., secs. 4386 to 4390. The defendant was not, therefore, in the exclusive control of the cattle at all times during the transit. The agreed statement of facts, as previously stated, shows that when the train, in which the two cars of cattle had been placed by defendant, reached Gault that Pierson requested the trainmen for permission to unload the cattle for feed, water and rest, and that this permission was given by defendant. After the cattle had been unloaded for the purpose just mentioned, and while in the exclusive possession of Pierson as owner, he decided to dispose of a part of them which he did, and so only reloaded a part of them. The cattle, so far as the defendant was informed, were the property of Pierson and in his possession. Defendant had the right to demand the payment of the

through charges on all the cattle, but it had no right to require that Pierson reload all of them for further transit. As Pierson, under his contract with defendant, was both consignor and consignee, it is difficult to see what right the defendant had to require the return of the cattle to its cars for further transit. Nor is any good reason seen why Pierson might not have, if he had chosen to do so, terminated the transit at Gault and accepted the cattle there instead of requiring them to be delivered at the end of the transit contracted for. If the cattle were not delivered by defendant at Kansas City. as required by its contract with Pierson, it was not because of any fault on its part.

The plaintiff, the real owner, between which and the defendant there was no privity, had no right to complain of the action of the defendant in permitting Pierson to unload and not return part of the cattle at Gault unless it then had notice of the plaintiff's rights. The case is not different than if the plaintiff itself during the transit had at some point unloaded the cattle and had not returned part of them, so that the defendant had been unable to make a delivery of all of them at the station where consigned. Most obviously, in such case, the defendant would be excused from making delivery of all of the cattle.

As far as disclosed by the statement of facts agreed, the defendant acted in entire good faith throughout the entire transaction. No negligence can be fairly imputed to it. Our conclusion is, that on the facts agreed the defendant ought not to be held liable and, that the finding of the court that it should be so held, was error.

The judgment will accordingly be reversed. All concur.