M. Lewis & Sons *v.* Illinois Cent. R. Co. *et al.*[*]

(*Nashville.* December Term, 1923.)

1. STIPULATIONS. Stipulation held binding on petitioner for certiorari though not authenticated by signature of counsel.

A stipulation contained in the transcript between depositions filed as a whole, the caption of the first of which, referred to in the stipulation, showed that counsel for all parties were present when the depositions were taken, and purporting to be made "between counsel representing all parties," *held* binding on petitioner for *certiorari*, though not authenticated by the signature of any counsel. (*Post, pp.* 98, 99.)

2. CERTIORARI. Objection first made on certiorari to admission of stipulation too late.

An objection first made on *certiorari* to admission of a stipulation as evidence is too late. (*Post, p.* 99.)

Cases cited and approved: Nelson v. Claybrooke, 72 Tenn., 687; Ehrlich v. Weber, 114 Tenn., 711; Insurance Co. v. Scales, 101 Tenn., 628; Earp v. Edgington, 107 Tenn., 23; Keneval v. State, 107 Tenn., 581; Wheeler v. Sedgwick, 94 U. S., 1.

3. EVIDENCE. Judicial knowledge that informal stipulations are frequently made and observed though unsigned.

The supreme court knows from observation and experience that informal stipulations between counsel, such as waivers of formalities in taking depositions, or leave to use copies instead of original exhibits, are frequently made, observed, and relied on, though unsigned. (*Post, pp.* 99, 100.)

---

[*]On presumption and burden of proof as to where loss or damage occurred in case of connecting carriers, see note in 31 L. R. A. (N. S.), 102.

M. Lewis & Sons v. Ill. Cent. R. Co.

Case cited and approved: Gas & Electric Co. v. Simpson, 113 Tenn., 532.

4. **APPEAL AND ERROR.** Objection to insertion of stipulation in record should be made in lower court.

To attack a stipulation between counsel as unauthorized and improperly inserted in the record by the reporter, objection should be made in the lower court, so that other parties may apply for leave to take additional proof on the matters covered thereby, or for other relief. (*Post, p.* 100.)

5. **CARRIERS.** Goods in good condition when delivered to initial carrier presumed damaged while in possession of delivering carrier.

Goods delivered to the initial carrier in good condition, but delivered by the last connecting carrier in damaged condition, are presumed to have been damaged while in the latter's possession, and the Carmack Amendment (U. S. Comp. St., Sections 8604a, 8604aa) does not change such rule. (*Post, pp.* 100-104.)

Cases cited and approved: Chicago & N. W. Ry. Co. v. Whitnack Produce Co., 258 U. S., 369; Memphis & Charleston Railroad Co. v. Holloway, 68 Tenn., 188; Railroad v. Brewing Co., 96 Tenn., 677; Price v. N. Y. Cen. R. R. Co., 121 N. Y. Supp., 333; Willett v. So Ry. C., 66 S. C., 477; Tex. & Pac. Ry. Co. v. Capper, 38 Tex. Civ. App., 61.

Cases cited and disapproved: Nanson v. Jacobs, 93 Mo., 331; Mo. Pac. Ry. v. Young, 25 Neb., 651; Hooper v. C. & N. W. Ry. Co., 27 Wis., 81.

6. **CARRIERS.** Decree against transfer company for value of goods lost in transit held justified by evidence.

Evidence as to thefts by employees of a transfer company from boxes of goods hauled by it from railroad freighthouses to consignees *held* sufficient to sustain a decree against it for the value of goods missing from a box thus delivered by it, whether or not it was a connecting carrier presumed liable for loss of goods delivered to the initial carrier in good condition. (*Post, p.* 104.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
HON. I. H. PERES, Chancellor.

RANDOLPH & RANDOLPH, for complainants.

BURCH, MINOR & McKAY, L. W. TAYLOR and SIVLEY,
EVANS & McCADDEN, for defendants.

MR. MALONE, Special Judge, delivered the opinion of the
Court.

The complainants, merchants in Memphis, Tenn., filed
the bill herein against the Illinois Central Railroad Com-
pany and several other railroad companies, and against
the Lewis Transfer Company, a partnership engaged in
the transfer business in Memphis, Tenn., seeking to re-
cover the sum of $269.40, being the value (with interest)
of certain merchandise stolen from a box of goods con-
signed to the complainants at Memphis from New York
City.

The chancellor held that none of the railroad companies
were liable, but that complainants were "entitled to a de-
cree against defendant, the Lewis Transfer & Storage Com-
pany, which was the terminal carrier," in the sum of
$269.40.

The complainants appealed to the court of civil appeals
from so much of this decree as failed to hold the railroad
companies jointly liable with the transfer company, and
the defendant Lewis Transfer Company appealed from the
whole decree.

The court of civil appeals affirmed the decree of the
chancellor. It was of opinion that the transfer company

could not be considered a connecting carrier, but, on a review of the evidence, held that the theft must have occurred while the goods were in its possession.

The Lewis Transfer Company has filed its petition for certiorari, and the complainants have also filed a petition, seeking a decree against the railroad companies in case this court should sustain the petition of the Lewis Transfer Company.

1. In order to sustain its conclusion on the facts, the court of civil appeals found it necessary to rely on the following portion of the transcript:

"Stipulation of Counsel.

"It is agreed by and between counsel representing all parties to this litigation that, when car A. T. & S. F. 26207, containing the box involved in this litigation, was received by the Illinois Central Railroad Company from its connecting carrier at Louisville, Ky., it bore the same seal numbers at those testified to by the witness George Gordon."

This "stipulation" follows the deposition of George Gordon, and immediately precedes the deposition of W. A. Wyley.

These depositions were filed in the cause, and were taken under a caption showing that the depositions of George Gordon, W. A. Wyley, and G. H. McLean were taken by consent on December 30, 1921, in the city of Memphis, Tenn., at the office of one of the counsel in the case. This caption reads, in part, as follows:

"Present:

"For complainant, Wassell Randolph, Esq.; for defendant Lewis Transfer Company, Lowell W. Taylor, Esq.; for defendant New York Central Railroad Company, C.

H. McKay, Esq.; for defendant Illinois Central Railroad Company, Thomas A. Evans, Esq."

These are the counsel of record for the various parties in this cause.

After the caption appears this statement:

"George Gordon, the first witness, having been duly sworn deposed as follows:

"[Then follows deposition of George Gordon, including the jurat.]"

Then comes the "stipulation" already quoted, which is on a separate page of the transcript.

On the next page of the record, immediately following the stipulation, appears the following:

"W. A. Wyley, the next witness, having been duly sworn, deposed as follows:

"[Then follows the deposition of W. A. Wyley.]"

It is insisted in the petition of the Lewis Transfer Company that this "so-called stipulation" is a nullity; that—

"It should be given no more consideration than a blank piece of paper. There is nothing to even indicate that it was ever filed. It is not signed by any one and how it got into the record is a mystery. There is nothing to even indicate that the Lewis Transfer Company became a party thereto. How can it be bound by it?"

We do not think that it can be said that this stipulation was never filed in the case, for it is evidently contained in the transcript of the depositions, which was filed as a whole.

We think, moreover, that it is improbable that the reporter, in transcribing these depositions, inserted this "stipulation" between the two depositions without authority. It follows and refers to the testimony of the witness

M. Lewis & Sons v. Ill. Cent. R. Co.

George Gordon. It covers a material fact in the litigation. The caption of the deposition shows that counsel for all parties (including counsel for the Lewis Transfer Company) were present when the depositions were taken, and the stipulation, on its face, purports to be made "between counsel representing all parties to this litigation."

It is true that the stipulation is not authenticated by the signatures of any counsel. But neither is the stipulation in the caption that the depositions were taken by consent with waiver of all formalities, and the further stipulation that the signatures of the witnesses to their depositions are waived.

But, conceding that counsel might have objected to this stipulation as evidence in the court below, the record shows no objection of any kind to its admissibility in the trial court.

Under these circumstances, we are of opinion that the objection made here for the first time comes too late. *Nelson* v. *Claybrooke,* 4 Lea, 687, 691, 692; *Ehrlich* v. *Weber,* 114 Tenn., 711, 718, 88 S. W., 188; *Insurance Co.* v. *Scales,* 101 Tenn., 628, 632, 640, 49 S. W., 743; *Earp* v. *Edgington,* 107 Tenn., 23, 30, 64 S. W., 40; *Keneval* v. *State,* 107 Tenn., 581, 585, 586, 64 S. W., 897; *Wheeler* v. *Sedgwick,* 94 U. S., 1, 3, 24 L. Ed., 31.

We know from observation and experience that informal stipulations similar to the one in question, are frequently made and observed, although unsigned, and reliance is placed upon them by counsel. Thus, in taking depositions, formalities are waived, or leave is given to use a copy instead of an original exhibit, by notation dictated to the reporter.

Even an oral stipulation between court and counsel relating to a bill of exceptions may be enforced by original bill in equity, where its repudiation would cause irreparable injury to one of the parties, though the case be then pending in this court. *Gas & Electric Co.* v. *Simpson,* 118 Tenn., 532, 103 S. W., 788.

We think that, if counsel wish to attack such a stipulation as unauthorized, and as improperly inserted into the record by the reporter, objection should be made in the lower court, so that other parties may then apply to the chancellor for leave to take additional proof on the matters covered by the stipulation, or for other appropriate relief.

We are therefore of opinion that the court of civil appeals properly considered this stipulation in reaching its conclusion on the facts.

2. It is insisted for the Illinois Central Railway and others that the Lewis Transfer Company was a common carrier (10 C. J., p. 50) ; that the box containing the goods in question was delivered (as the transfer company concedes) in good condition to the New York Central Railroad, the initial carrier; that the transfer company was the last carrier handling the shipment, and delivered it in damaged condition; and that a presumption arises that the loss occurred while the goods were in its possession.

The general principle is well settled as between connecting carriers. It is in turn based on the presumption in favor of the continuance of a State or condition once shown to exist—i. e., that goods received in good condition remain in good condition until they reach the carrier in whose hands they are found in damaged condition. 3 Hutchinson on Carriers (3d Ed.) p. 1591; 2 Moore on

Carriers, p. 776; 4 Michie on Carriers, section 3801; 4 R. C. L. pp. 925, 926; 10 C. J., 556; 6 Cyc., 491; *Chicago & N. W. Ry. Co.* v. *Whitnack Produce Co.,* (April 10, 1922), 258 U. S., 369, 42 Sup. Ct., 328, 66 L. Ed.,.665.

Our own cases are in accord. *Memphis & Charleston Railroad Co.* v. *Holloway,* (1877) 9 Baxt. 188; *Railroad* v. *Brewing Co.,* (1896), 96 Tenn., 677, 679, 36 S. W., 392.

The Carmack Amendment (U. S. Comp. St., sections 8604a, 8604aa) does not change this rule. *Chicago & N. W. Ry. Co.* v. *Whitnack Produce Co.,* supra, affirming Id., 104 Neb., 587, 178 N. W., 177.

Does this presumption apply in the case of a transfer company? Is it a "connecting common carrier" within the scope of the rule?

The point has never been decided in this State, and the authorities elsewhere are divided.

As supporting the view that it is a connecting carrier, within the rule, see *Price* v. *New York Central R. R. Co.,* (Sup. 1910) 121 N. Y. Supp., 333; *Willett v. Southern Ry. Co.,* (1903) 66 S. C., 477, 45 S. E., 93; *Texas & Pacific Ry. Co.* v. *Capper* (1905) 38 Tex. Civ. App., 61, 84 S. W., 694, 10 C. J., 559.

As supporting the contrary view, see *Nanson* v. *Jacobs,* (1887), 93 Mo., 331, 6 S. W., 246, 3 Am. St. Rep., 531, affirming Id., 12 Mo. App., 125; *Missouri Pacific Ry.* v. *Young,* (1889), 25 Neb., 651, 41 N. W., 646; *Hooper* v. *Chicago & Northwestern Ry. Co.,* (1870) 27 Wis., 81, 9 Am. Rep., 439; 1 Hutchinson on Carriers (3d Ed.) section 247; 4 Elliott on Railroads (3d Ed.), section 2181.

3. Before considering this question further, it seems advisable to briefly review the facts of this case, as disclosed by the record.

On July 29, 1920, the complainant Moses Lewis purchased certain goods in New York.City, and saw them packed in a box, and saw the box nailed up and marked, addressed to himself at Memphis, Tenn.

In the afternoon of August 6, 1920, the box, so marked was received by the New York Central Railroad at St. John's Park Station, New York City. That railroad company issued a bill of lading, acknowledging receipt of the box "in apparent good order," but with the reservation that "contents and condition of contents of packages [were] unknown."

The box was checked and weighed and loaded into car A. T. & S. F. 26207, which was sealed at all openings, and was moved from the station at 6 p. m. the same day, and left the New York Terminal in a freight train at 10:30 p. m. that night.

The car reached Cleveland, Ohio, on August 9, 1920, and was promptly delivered to the Cleveland, Cincinnati, Chicago & St. Louis Railway, with the original seals intact, and was forwarded on its journey the same afternoon.

It was transported by the Cleveland, Cincinnati, Chicago & St. Louis Railway to Louisville, Ky., where it arrived on the morning of August 13, 1920, and was delivered to the Illinois Central Railroad at 1 o'clock p. m. on that day, with the original seals still intact.

The car was then transported by the Illinois Railroad Company to Memphis, Tenn., where it arrived on the morning of August 16th, with the original seals still unbroken.

On the morning of August 16, 1920, the seals were broken, and the box in question was unloaded from the car. The box was placed in the Lewis Transfer Com-

pany's section of the Illinois Central Railroad in-bound freight house, where it remained until August 18, 1920 On that day it was delivered to defendant Lewis Transfer Company, who received the same as being in good condition, and without exceptions.

The proof shows that between 75 and 80 persons are employed in this freight house, and that they are constantly passing to and fro in the daytime; that at night the freight house is locked and put in charge of a watchman.

When the box was delivered by the defendant Lewis Transfer Company to the complainant, it bore evidence of having been broken open and renailed, and an examination made of the contents showed that parts of the same were missing.

There was nothing about the appearance of the box to indicate, on casual inspection that it had been broken open.

The record further discloses that during the year 1920 employees of the Lewis Transfer Company had stolen goods amounting to thousands of dollars in value while hauling packages in the two-horse covered wagons used by that company from railroad depots to the business houses of the consignees.

A special agent of the St. Louis & San Francisco Railroad at Memphis followed one of these drivers, and caught him in the act of breaking open a box while the wagon was stopped in an alley in the heart of the business district of the city. The driver, after opening the box and taking out some of the contents immediately nailed it up again, placing the nails which he had taken out in the same holes from which they had been extracted.

It is further shown that one George Washington, colored, was the driver of the wagon which hauled this shipment. He had left Memphis at the time of the trial, and did not testify in the case, his whereabouts being unknown. It was suggested by one of the witnesses that he had been forced to go West on account of ill health. The record, however, discloses that after two negro employees of the Lewis Transfer Company had been arrested they pleaded guilty to thefts, and made statements implicating George Washington.

The Lewis Transfer Company insists that the box was not opened while in its possession, and has taken the deposition of a negro who was with the driver, George Washington, when this shipment was delivered. He undertakes to be very definite in his statements as to this particular trip, but insists positively that it was made on August 12, 1920. He can remember no other trip around this date. The court of civil appeals was not disposed to credit this testimony, and we are inclined to take the same view.

Under the facts thus disclosed by the record, we do not think it necessary to decide whether the presumption obtaining in the case of connecting carriers applies to the Lewis Transfer Company.

For, irrespective of this rule, we concur in the view expressed by the court of civil appeals in the opinion of Mr. Justice CLARKE, and are convinced that the chancellor and court of civil appeals correctly held the Lewis Transfer Company liable for this loss, on the weight of the proof.

It results that both petitions for *certiorari* will be denied, and the decree of the court of civil appeals in all things affirmed.