# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 17, 2010 Session

## RYNE W. BROWN v. CATHERINE L. BROWN, Trustee, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-1854,      Walter L. Evans, Chancellor**

**No. W2009-02264-COA-R3-CV - Filed February 9, 2011**

Appellant contends that he is a beneficiary of a trust created by his parents and thus entitled to distributions of principal and income. In a declaratory judgment action, the trial court determined that Appellant was not entitled to mandatory distributions of income or principal until both of his parents were deceased. We affirm this portion of the trial court's judgment. The trial court also determined that no corporate trustee was required. We reverse this portion of the trial court's judgment and remand for the appointment of a corporate trustee.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part, and Remanded.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Kevin A. Snider, Germantown, Tennessee, for the appellant, Ryne W. Brown.

Lynn W. Thompson and G. Patrick Arnoult, Memphis, Tennessee, for the appellees, Catherine L. Brown, as Trustee and Individually, Cathleen Lucille Brown Sibley, Graham W. Sibley, Hilary E. Sibley Murphy, Ashley Mills Sibley, and Alexander Mills Sibley.

## MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. Facts & Procedure

This case involves the interpretation of a trust. On September 25, 1992, Roland W. and Catherine L. Brown executed and funded the "Roland and Catherine Brown Living Trust" (also referred to hereinafter as the "trust" or "trust agreement"). The trust agreement was amendable and revocable while both Roland and Catherine Brown were living, and the two served as joint trustees of the trust. On February 13, 1999, Roland Brown died. Under the terms of the trust, at the death of Roland Brown, the assets of the Roland and Catherine Brown Living Trust were divided into two trusts: (1) the Brown Marital Trust; and (2) the Brown Family Trust. The death of Roland Brown also activated the appointment of Union Planters Bank (referred to hereinafter as its successor, "Regions Bank") to serve with Catherine Brown as trustees of both the Brown Marital Trust and the Brown Family Trust.[2]

On September 26, 2006, Appellant, Ryne Brown, who is the son of Roland and Catherine Brown, filed a complaint for declaratory judgment in the Chancery Court of Shelby County. This complaint identified the defendants as Catherine L. Brown, Trustee, Cecil Smith, and Regions Bank. Mr. Smith, the attorney who drafted the trust, was later dismissed as a defendant. Ryne Brown's second amended complaint, filed May 16, 2008, identified as defendants Catherine L. Brown, Trustee; Catherine L. Brown, individually; Cathleen Lucille Brown Sibley; Graham W. Sibley; Hilary E. Sibley; Ashley Mills Sibley; and Alexander Sibley (together, "Appellees"[3]); and Regions Bank. By stipulation of the parties, discussed in more detail below, Regions Bank was later dismissed as a defendant. Mr. Brown's second amended complaint for declaratory judgment delineated twenty-four "Disputed Issues to be Decided." At trial and on appeal, Mr. Brown essentially contends that he is a current beneficiary of the Brown Family Trust, and, consequently, entitled to income and principal distributions. Mr. Brown's sub-issues all stem from this contention and generally relate to the management of the trust in contradiction to his alleged status as a beneficiary.

A trial was held on September 8, 2009, and a final appealable order was obtained on June 16, 2010. The trial court found that Ryne Brown did not have a "discernible interest" in the Brown Family Trust "until such time that the surviving Trustmaker, Catherine L. Brown, had died and only if there [we]re trust assets remaining at that time." Mr. Brown

---

[2]As discussed in more detail below, all parties stipulated to the fact that Regions Bank did not accept its designation to serve as trustee of either trust.

[3]Cathleen Lucille Brown Sibley, Graham W. Sibley, Hilary E. Sibley, Ashley Mills Sibley, and Alexander Sibley are descendants, along with Ryne Brown, of Roland and Catherine Brown and are potential beneficiaries under the trust agreement.

raises the following issues on appeal, as stated in his second amended brief:

> 1. Whether the Trial Court erred in its interpretation of the Brown Family Trust as to the degree of decision-making and discretion of the surviving Trustmaker regarding the distribution of income subject to the terms mentioned therein.
>
> 2. Whether the Trial Court erred in its interpretation of the Brown Family Trust by not giving a reasonable meaning to all of its provisions without neutralizing portions of it.
>
> 3. Whether the Trial Court erred with its holding as to rights and obligations of the Trustees under the Brown Family Trust.
>
> 4. Whether the Trial Court properly determined the rights of the current and contingent beneficiaries listed under the Brown Family Trust.

## II. Standard of Review

This case was tried before the court sitting without a jury; therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). A trust instrument is to be interpreted similarly to contracts, deeds, or wills. ***In re Estate of Marks***, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005) (citing ***Marks v. S. Trust Co.***, 310 S.W.2d 435, 437-38 (Tenn. 1958)). Consequently, the interpretation of a trust is a question of law for the court. ***Estate of Burchfiel v. First United Methodist Church of Sevierville***, 933 S.W.2d 481, 483 (Tenn. Ct. App. 1996). No presumption of correctness attaches to the trial court's conclusions of law and our review is *de novo*. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

## III. Analysis

A trust must be interpreted according to its plain terms as written. ***Graber v. Graber***, No. W2003-01180-COA-R3-CV, 2003 WL 23099689, at *3 (Tenn. Ct. App. Dec. 31, 2003) (citing ***Warren v. Metro Gov't of Nashville and Davidson Co.***, 955 S.W.2d 618, 622-23 (Tenn. Ct. App. 1997)). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." ***Graber***, 2003 WL 23099689, at *3 (citing ***Davidson v. Davidson***, 916 S.W.2d 918, 922-23 (Tenn. Ct. App. 1995)). The entire written agreement must be considered in order

to ascertain the parties' intent. *Graber*, 2003 WL 23099689, at *3 (citing *D & E Constr. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 518-19 (Tenn. 2001)). The intent of the settlors must be derived from the four corners of the agreement, giving effect to all parts of the agreement. *In Re Estate of Marks*, 187 S.W.3d at 28 (citing *Marks v. S. Trust Co.*, 310 S.W.2d at 438). The settlors' intent is ascertained from the particular words used, from the context, and from the general scope and purpose of the instrument. *Holder v. First Tennessee Bank N.A. Memphis*, No. W1998-00890-COA-R3-CV, 2000 WL 349727, at *3 (Tenn. Ct. App. March 31, 2000) (citing *Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990)). If the agreement is ambiguous, then the intent of the parties may be ascertained by extrinsic evidence. *Blue Diamond Coal v. Holland-Am. Ins. Co.*, 671 S.W.2d 829, 833 (Tenn. 1984). "A contract is considered ambiguous if, after considering its plain terms as a whole, it is susceptible to more than one meaning." *Graber*, 2003 WL 23099689, at *3 (quoting *McGee v. Best*, 106 S.W.3d 48, 62-63 (Tenn. Ct. App. 2002)).

To determine whether Mr. Brown is a beneficiary of the Brown Family Trust, we must first determine which portions of the trust agreement are presently in effect. Appellees contend that because a settlor of the trust, Mrs. Brown (indisputably referred to in the trust agreement as the "surviving Trustmaker"), is still living, Article Ten is the active article which should guide our inquiry. On the other hand, Mr. Brown contends that Article Twelve is presently active and that it provides him a fifty percent interest in the assets of the Brown Family Trust. The trial court determined that the trust agreement was not ambiguous, that Article Ten was in effect until Mrs. Brown dies, that Article Twelve was not in effect until that time, and that Mr. Brown had no "discernible interest" in the Brown Family Trust until the death of Mrs. Brown and only then if any trust property remained.

We note at the outset that the trust agreement is not ambiguous; therefore, "evidence of surrounding facts and circumstances that contradicts or varies the terms of the written instrument may not be considered." *In Re Estate of Marks*, 187 S.W.3d at 28 (citations omitted). Thus, we will not consider the testimony of the parties as to their interpretation of the agreement. The relevant portions of the trust agreement are set out below:

**Article Ten–The Family Trust**

**Section 1.  The Surviving Trustmaker's Right to Income**

If there is a surviving Trustmaker, our Trustee shall pay to, or apply for the benefit of, the surviving Trustmaker, at least monthly during the surviving Trustmaker's lifetime, all of the net income from the Family Trust.

**Section 2.  The Surviving Trustmaker's Right to Withdraw Principal**

The surviving Trustmaker shall have the noncumulative right to withdraw from the principal of the Family Trust in any calendar year amounts not to exceed $5000 in the aggregate.

In addition, on the last day of any calendar year, if the surviving Trustmaker is then living, the surviving Trustmaker may withdraw an amount by which 5 percent of the then market value of the principal of the Family Trust exceeds the principal amounts, if any, previously withdrawn in that year under this Section.

Without in any way limiting the noncumulative right of the surviving Trustmaker to withdraw principal pursuant to this Section, we suggest that this right not be exercised until the assets of the Marital Trust are exhausted.

. . . .

**Section 3.    Principal Distributions in Our Trustee's Discretion**

Our Trustee may also distribute to or for the benefit of the surviving Trustmaker and our descendants as much of the principal of the Family Trust as our Trustee, in its sole and absolute discretion, shall consider necessary or advisable for their education, health, maintenance, and support.

Our Trustee shall, at all times, give primary consideration to the surviving Trustmaker's education, health, maintenance, and support, and only thereafter to our descendants.
. . . .

**Section 5.  Limited Power of Appointment**

The surviving Trustmaker shall have the limited testamentary power to appoint to or for the benefit of our descendants, either by a valid last will and testament or by a

valid living trust agreement executed by the surviving Trustmaker, all or any portion of the principal and any accrued and undistributed net income of the Family Trust as it exists at the surviving Trustmaker's death.

The surviving Trustmaker may make distributions among our descendants in equal or unequal amounts, and on such terms and conditions, either outright or in trust, as the surviving Trustmaker shall determine.

This power shall not be exercised in favor of the surviving Trustmaker's estate, the creditors of the surviving Trustmaker's estate, or in any manner which would result in any economic benefit to the surviving Trustmaker.

**Section 6.  Termination of the Family Trust**

The Family Trust shall terminate at the death of the surviving Trustmaker.  To the extent that the limited power of appointment is not exercised by the surviving Trustmaker, the remainder of the Family Trust, including any accrued and undistributed net income, shall be administered as provided in the Articles that follow.

## Article Eleven–The Common Trust

It is not our desire to create a Common Trust for the benefit of our children.  Upon the death of the second Trustmaker to die, all of the trust property which has not been distributed under prior provisions of the agreement shall be divided, administered, and distributed under the Articles that follow.

## Article Twelve–Distribution of Our Trust Property

**Section 1.  Division into Separate Shares**

All trust property not previously distributed under the terms of our trust shall be divided as follows:

| Beneficiary | Relationship | Share |
|---|---|---|
| Cathleen Lucille Brown Sibley | Daughter | Equal |
| Ryne Wendel Brown | Son | Equal |

. . . .

**Section 4. Retention of Distributions in Trust**

Whenever a distribution is authorized or required to be made by a provision of this Article to any beneficiary, then that beneficiary may direct our Trustee in writing to retain such distribution in trust as follows:

**a. A Beneficiary's Right to Income**

Our Trustee, during the lifetime of the beneficiary, shall pay to or apply for the benefit of the beneficiary from time to time and at the beneficiary's written direction all of the net income from this trust.

**b. A Beneficiary's Right to Withdraw Principal**

Our Trustee shall pay to or apply for the benefit of the beneficiary such amounts from the principal as the beneficiary may at any time request in writing.

No limitation shall be placed on the beneficiary as to either the amount of or reason for such invasion of principal.

. . . .

Article Ten is entitled "The Family Trust." Pursuant to Article Ten, Section One, the surviving Trustmaker, Mrs. Brown, has the right to all of the net income of the Brown Family Trust. Article Ten, Section Two gives Mrs. Brown the right to withdraw principal within certain specific standards. Article Ten, Section Three provides that the Trustee may make discretionary distributions of principal for the health, education, maintenance, and support of Mrs. Brown and her descendants (including Ryne Brown), with a preference for distributions to Mrs. Brown. Lastly, Article Ten, Section Five also gives Mrs. Brown a

limited power of appointment by which she can distribute any remaining assets of the trust among her descendants by testamentary instrument.

Under these provisions, Ryne Brown is not a mandatory beneficiary of either the income or principal of the Brown Family Trust. Rather, his only present interest is at the discretion of the Trustee (for distributions of principal for his health, education, maintenance, and support) or the surviving Trustmaker (as a recipient of her limited power of appointment). Article Ten, Section Six concludes that the Brown Family Trust terminates at the death of Mrs. Brown. At that time, the agreement provides that any remaining trust property "shall be administered as provided in the Articles that follow." The following article, Article Eleven, states that at the death of Mrs. Brown, all trust property not "distributed under prior provisions of the agreement shall be divided, administered, and distributed under the Articles that follow." Thus, it is only upon the death of Mrs. Brown, and only if any trust property remains in the Brown Family Trust at that time, that the provisions of Article Twelve come into effect. Article Twelve, the article upon which Mr. Brown makes his claim, begins by stating that "[a]ll trust property not previously distributed under the terms of our trust shall be divided as follows." However, as the trial court correctly noted, "[i]t is conceivable . . . that Mrs. Catherine Lucille Mills Brown could, in satisfying the requirements of Article Ten, expend and use up The Family Trust to the extent that there would be nothing left to divide to Ryne Wendell Brown and Cathleen Lucille Brown Sibley under Article Twelve." While Mr. Brown is a beneficiary under Article Twelve, that article only comes into effect at the death of Mrs. Brown as a way of distributing any remaining trust property. Thus, Mr. Brown's only present interest in the Brown Family Trust is as a discretionary beneficiary of the principal. This is the interpretation that the trial court gave the trust agreement, and we affirm the trial court's judgment in this respect.

Mr. Brown next contends that the trust agreement required a corporate trustee to serve alongside Mrs. Brown. The trial court determined that a corporate trustee was not mandatory; however, we respectfully disagree. Article Fifteen, Section Three, Subsection (f) provides that "if either Trustmaker has named [a] corporate Trustee to serve, such corporate Trustee, if unable to serve for any reason, must be replaced with another corporate Trustee." The parties stipulated that the trust agreement named Regions Bank to act as corporate trustee upon the death of Roland Wendel Brown and that Regions Bank did not accept this appointment and, therefore, never served as corporate trustee. Likewise, it is undisputed that, in 2008, Mrs. Brown named Cumberland Trust as corporate trustee and that Cumberland Trust no longer serves in this capacity. Presently, there is not a corporate trustee of the trust agreement, and Mrs. Brown is the sole trustee.

Thus, it is undisputed that Mrs. Brown named a corporate trustee, and that, for whatever reason, such trustee was unable to serve. Under the plain terms of the trust

agreement, then, a successor corporate trustee must be appointed. We do not agree with Mrs. Brown's contention that Article Fifteen, Section Three, Subsection (a) controls. That subsection provides that if any other Trustee is "unable or unwilling to serve . . . *we* may or may not fill the vacancy, *as we both agree*" (emphases added). Clearly, this subsection only applied when both Roland and Catherine Brown were alive to agree on whether to fill the vacancy. After the death of Roland Brown, this subsection has no further applicability.

While it is clear that the trust agreement mandates the appointment of a replacement corporate trustee, it does not provide a procedure for doing so. Article Fifteen, Section Three, subsection (g) provides procedures for filling an unfilled trusteeship; however, that subsection only applies when "*no* named Trustees are available" (emphasis added). Because Mrs. Brown is currently serving as trustee, a named trustee is available and subsection (g) is inapplicable. The trust agreement is otherwise silent as to how a corporate trustee should be appointed or who should have a role in deciding such matters. Nonetheless, because the trust agreement clearly mandates that a corporate Trustee be named as a replacement, we reverse this part of the trial court's judgment and remand to the trial court for the limited purpose of appointing a corporate trustee in a manner consistent with the terms of the trust.

Mr. Brown next raises a multitude of issues regarding alleged breaches of fiduciary duty by Regions Bank and Mrs. Brown as trustees. Because the parties stipulated that Regions Bank never accepted its appointment as trustee and never served in that capacity, we summarily dismiss all issues pertaining to alleged breaches by Regions Bank. Because Regions Bank never served as trustee, it could not breach a fiduciary duty arising out of that role. Mr. Brown cannot contradict his factual stipulation by adopting a different position on appeal. *See **Mast Adver. & Pub., Inc. v. Moyers***, 865 S.W.2d 900, 903 (Tenn. 1993) (citing ***Lewis & Sons v. Ill. Cent. R. Co.***, 150 Tenn. 94, 259 S.W. 903 (1924); ***Stearns v. Williams***, 12 Tenn. App. 427 (1930)).

Mr. Brown also alleges that Mrs. Brown breached her fiduciary duties in her role as trustee. These allegations relate to how the trust property was distributed, the extent of notice, disclosures, and accountings, and the failure to maintain a corporate trustee. The trial court determined that, pursuant to the terms of the trust agreement, Mr. Brown did not prove that the trustee breached any duty that was owed to him. We agree with the trial court's assessment. We further note that, even if Mr. Brown had proven a technical violation of the terms of the trust, because he was merely a discretionary beneficiary, he could not prove that he suffered any loss as a result of the acts of the trustee. Thus, where Mr. Brown cannot prove any loss, we will not hold the trustee liable for an alleged technical violation. *See **Oram v. Fitzpatrick***, No. 85-307-II, 1986 WL 6061, at *3 (Tenn. Ct. App. May 29, 1986). This is particularly relevant because we remand for the appointment of a corporate trustee. The trust agreement requires that a corporate trustee be appointed, and we cannot ignore this

plain directive. However, the absence of a corporate trustee does not prove that Mrs. Brown breached her fiduciary duty as trustee with regards to Mr. Brown. The trust provided that, as a Trustmaker, whenever Mrs. Brown served jointly with another trustee, she was entitled to act without the consent of the other trustee.[4] Thus, any decisions that Mrs. Brown made while serving as sole trustee were within the discretion granted to her by the trust agreement. Furthermore, because Mr. Brown's interest in the trust was discretionary only, and could be divested at the sole discretion of Mrs. Brown, he cannot show that he suffered any loss as a result of her actions as trustee. *See **id***. Consequently, while we remand for the appointment of a corporate trustee, we affirm the trial court's judgment that no breach of fiduciary duty occurred. All other issues are pretermitted.

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded for the limited purpose of appointing a corporate trustee. Costs of this appeal are taxed to Appellant, Ryne W. Brown, and his surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[4]Article One, Section One provides that "[n]otwithstanding anything in our trust to the contrary, when we are serving as Trustees under our trust, either of us may act for and conduct business on behalf of our trust as a Trustee without the consent of any other Trustee." Further, Article One, Section Two provides that:

> When naming any joint trustees, including successor trustees, the terms "and" and "or" may be used between their names. In all such cases, when a Trustmaker is serving jointly with another trustee, the Trustmaker may transfer assets or conduct any of the business on behalf of the trust, without the consent of any other trustee, regardless of whether the term "and" or "or" has been used to identify them as trustees of the trust.